IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDWARD C. KELLER, | No. 4:22-CV-00013 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| SIERRA-CEDAR, LLC, | |
| Defendant. | |

**MEMORANDUM OPINION**

**DECEMBER 5, 2023**

Federal Rule of Civil Procedure 11 provide a vehicle for deterring abuses of the legal system: imposing sanctions. But sanctions are serious business. Receiving sanctions signals a severe lack of professionalism and inflicts lasting damage to a lawyer's credibility. So while moving for sanctions is a necessary tool to prevent injustice, such motions are not to be used as a "hardball" litigation tactic. They must be reserved for transgressions so severe that action is needed to deter future misconduct and protect the public. In this case, the Defendant asks for sanctions in the form of dismissal, arguing that the Plaintiff's claim was frivolous because it was barred by the statute of limitations. Without commenting on the merits of the statute of limitations defense, this Court denies the request for sanctions. The statute of limitations arguments must be resolved on the merits, and not through a Rule 11 motion.

I.  **BACKGROUND**

In January 2022, Edward Keller filed a complaint against Sierra-Cedar, Inc. ("Sierra-Cedar"), alleging unlawful discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*, and the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.*[1] This Court denied Sierra-Cedar's motion to dismiss as to Keller's Title VII claim in October 2022.[2] Sierra-Cedar filed its answer in November 2022.[3] In October 2023, Sierra-Cedar filed a motion for sanctions, seeking dismissal of Keller's case.[4] The motion is now ripe for disposition.

II.  **DISCUSSION**

   A.  **Facts**

This motion for sanctions flows from the timing with which Keller filed his complaint in this Court. Keller was employed with Sierra-Cedar from 2017 to 2020.[5] Beginning in February 2019, Sierra-Cedar began replacing Keller on various projects with a younger female employee, Cathy Bass, which resulted in a reduction in Keller's billable hours.[6] Bass stated that as Sierra-Cedar "had been giving presentations by six or seven white men," the "higher-ups" replaced Keller with Bass because "they needed a 'skirt.'"[7] Keller was ultimately replaced and terminated in February 2020.[8] Keller then

---

[1]  Doc. 1 ¶¶24-31, 34-39.
[2]  Docs. 15-16.
[3]  Doc. 17.
[4]  Doc. 33.
[5]  Doc. 1 ¶¶7-21.
[6]  *Id.* ¶¶14-19.
[7]  *Id.* ¶19.
[8]  *Id.* 21-22.

filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC").[9] The EEOC declined to take action and authorized Keller to sue Sierra-Cedar himself.[10] He filed suit in this Court in January 2022.[11]

In its motion to dismiss, Sierra-Cedar contended that Keller filed suit outside of the applicable 90-day statute of limitations period, which commences upon a plaintiff's receipt of his right to sue letter.[12] Sierra-Cedar attached an activity log obtained from the EEOC through a Freedom of Information Act request, which stated that Vistina Chevalier, a paralegal employed at the law firm representing Keller, had downloaded the right to sue letter on September 27, 2021.[13] Keller denied this claim and maintained that he first received his right to sue through regular mail on October 8, 2021, placing his filing within the statute of limitations.[14] This Court ultimately refused to credit Sierra-Cedar's unauthenticated document on its motion to dismiss.[15]

After discovery began, Sierra-Cedar shored up its allegation that the right to sue notice had, in fact, been downloaded by Ms. Chevalier. It first obtained a Declaration from EEOC Supervisory Investigator Robert K. McMeekin, confirming that the EEOC Activity Log reflected Chevalier's download of the notice on September 27, 2021.[16] Sierra-Cedar then wrote to Keller's counsel, attaching McMeekin's Declaration and

---

[9] *Id.* ¶6.
[10] *Id.* ¶6; Doc. 1-1.
[11] Doc. 1.
[12] Doc. 11 at 4-5.
[13] Doc. 12-4 at 2.
[14] Doc. 13 at 2, 6-7.
[15] Doc. 15 at 6.
[16] Doc. 35-5.

requesting that Keller withdraw his complaint, which Keller refused.[17] Sierra-Cedar then served a subpoena on Keller's counsel's office, requesting the download history from Ms. Chevalier's computer and all versions of the notice created or modified.[18] Sierra-Cedar alleges that the parties discussed confidentiality concerns about the subpoena, but that Keller's counsel ultimately refused to provide any responsive data.[19] According to Sierra-Cedar, the firm's IT Expert represented in March 2023 that he had examined Ms. Chevalier's hard drive but found no available download history for the day of September 27, 2021.[20]

As this contention had contradicted the EEOC's activity log and as Keller's counsel had not responded to the subpoena, Sierra-Cedar raised the issue with this Court in a telephone status conference held in April 2023.[21] The parties agreed to retain a neutral expert to analyze the hard drive and provide data responsive to the subpoena, and they jointly retained Jim Vaughn to perform a forensic analysis.[22] Sierra-Cedar has attached the results of the analysis to its motion. The report concludes that Chevalier did, in fact, download and save a document on September 27, 2021, titled "2021-9-27+Keller+161.pdf."[23] That document was opened one second after download, and a pdf titled "Dismissal and Notice of Rights 9-27-21.pdf" was saved to the computer's "S

---

[17] Doc. 35-6.
[18] Doc. 35-7.
[19] Doc. 35 at 8-9.
[20] *Id.*
[21] Docs. 28, 35 at 5.
[22] Doc. 35 at 9-10.
[23] Doc. 35-8.

4

drive" three and a half minutes later.[24] Following Vaughn's report, Keller no longer contests that Chevalier downloaded the dismissal and notice of rights on September 27, 2021.[25]

Based on the findings of Vaughn's report, Sierra-Cedar wrote to Keller's counsel again on August 14 and August 20, 2023, requesting that Keller withdraw his complaint with prejudice.[26] Sierra-Cedar alleges that it contacted Keller's counsel again by phone on August 22, 2023, to discuss the expert report and request that he withdraw the complaint.[27] On each occasion, Keller's counsel refused.[28] Sierra-Cedar contacted Keller's counsel one final time on September 28, 2023, stating that it would file this motion for sanctions if the complaint was not withdrawn within twenty-one days.[29] Sierra-Cedar now moves for sanctions due to the refusal of Keller's counsel to withdraw his complaint, and requests sanctions in the form of dismissal of Keller's case.[30]

### B.    Legal Standard

Federal Rule of Civil Procedure 11 requires every pleading to be signed by an attorney of record, or by that party personally.[31] That signature is more than a formality—it "certifies" four guarantees "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances."[32]

---

[24] *Id.*
[25] Doc. 37 at 3-5.
[26] Doc. 35-9.
[27] Doc. 35 at 10.
[28] *Id.* at 10.
[29] Doc. 35 at 10; *see* Fed. R. Civ. P. 11(c)(2).
[30] Docs. 33, 35.
[31] Fed. R. Civ. P. 11(a).
[32] Fed. R. Civ. P. 11(b).

The signature attests (1) that the pleadings are not presented for an improper purpose, (2) that the claims, defenses, and other legal contentions are nonfrivolous, (3) that the factual contentions have or will likely have evidentiary support, and (4) that any denials of factual contentions are warranted on the evidence, or reasonably based on belief or a lack of information.[33]

Anyone who signs a pleading has a personal, nondelegable responsibility of certifying the truth and reasonableness of that document.[34] If the parties have violated Rule 11(b), the court may impose "an appropriate sanction," either by motion or *sua sponte*.[35] "Each of the rule's [four] elements imposes an independent duty on the signer of the paper; the violation of any one of them triggers the sanctions provisions of the rule."[36]

As amended, Rule 11 also extends to an attorney's "later advocating" the contents of the signed document.[37] As stated in the Advisory Committee's Notes to the 1993 Amendment, "a litigant's obligations with respect to the contents of these papers . . . include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit."[38] If after discovery it becomes apparent that a plaintiff's claims are unsupported, he has a duty

---

[33] *Id.*
[34] *Business Guides, Inc. v. Chromatic Comm's Enterprises, Inc.*, 498 U.S. 533, 547 (1991).
[35] Fed. R. Civ. P. 11(c)(1)-(3).
[36] 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1335 (4th ed. 2023).
[37] Fed. R. Civ. P. 11(a).
[38] Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment.

"not to persist" with the claim.[39] Therefore, subsequent decisions have imposed sanctions for a plaintiff's failure to withdraw a complaint due to its preclusion by a statute of limitations, albeit under extreme circumstances.[40]

Rule 11(b) violations for filing frivolous claims do not require that the attorney subjectively act in bad faith. "The court can impose sanctions for violations of Rule 11, even if the claims were brought in good faith, so long as the attorney failed to conduct a reasonable inquiry into the matter."[41] "Rule 11, however, is not a strict liability provision, and a showing of at least culpable carelessness is required before a violation of the Rule can be found."[42]

Even if incorrect, a party's argument is not considered frivolous so long as it is not patently unreasonable to conclude that it is "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."[43] "A district court presented with a Rule 11 motion for sanctions must determine whether the accused attorney's conduct was 'objectively reasonable under the circumstances.' Sanctions are to be applied only 'in the exceptional circumstance where a claim or motion is patently unmeritorious or frivolous.'"[44] This standard is doubly objective. It asks whether "a reasonable attorney would have

---

[39] *Id.*
[40] *See, e.g.*, *Huntsman v. Perry Local Schools Bd. of Educ.*, 379 F.App'x 456, 463 (6th Cir. 2010).
[41] *Jackson v. Hall Cnty Gov't, Georgia*, 568 F.App'x 676, 679 (11th Cir. 2014).
[42] *Credit Control Servs., Inc. v. Noble Sys. Corp.*, No. 12-11321-JLT, 2013 U.S. Dist. LEXIS 173912, at *4-5 (D. Mass. 2013) (quoting *CQ Int'l Co. v. Rochem Int'l, Inc., USA*, 659 F.3d 53, 60 (1st Cir. 2011)).
[43] Fed. R. Civ. P. 11(b)(2).
[44] *Anderson v. Bd. of Sch. Directors of Millcreek Twp. Sch. Dist.*, 574 F.App'x 169, 175 (3d Cir. 2014).

believed plaintiff['s] complaint to be well-founded in fact based on what a reasonable attorney would have known at the time."[45]

### C.     Rule 11 Analysis

#### 1.     The Parties' Arguments

As the frivolousness of Keller's case hinges on the strength of Sierra-Cedar's statute of limitations defense, the Court briefly sets out the applicable law and the parties' arguments. Title VII employment discrimination suits are subject to two filing deadlines. An initial complaint must be filed with the EEOC within 180 days of the adverse employment action, or 300 days if there has been cross-filing with a state agency.[46] If the EEOC decides not to prosecute the case, it will issue a right to sue letter. This triggers the second filing deadline: if the complainant wishes to bring a civil action herself, he must file his complaint within 90 days of his receipt of the right to sue letter.[47]

The filing window does not begin until the plaintiff's receipt of the notice.[48] The 90-day period is treated as a statute of limitations.[49] It is strictly construed and "in the absence of some equitable bases for tolling, a civil suit filed even one day late is time-barred and may be dismissed."[50] "Equitable tolling is generally appropriate in Title VII cases only when 'the defendant has actively misled the plaintiff; when the plaintiff in

---

[45] *In re Keegan Mgmt. Co. Securities Litig.*, 78 F.3d 431, 435 (9th Cir. 1996) (describing this as an "objective-objective" test).
[46] 42 U.S.C. § 2000e-5(e)(1).
[47] 42 U.S.C. § 2000e-5(f)(1).
[48] *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 239 (3d Cir. 1999).
[49] *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 470 (3d Cir. 2001).
[50] *Id.*

some extraordinary way was prevented from asserting her rights; or when the plaintiff timely asserted her rights in the wrong forum."[51]

As discussed, some courts have imposed sanctions under Rule 11 where a complaint is frivolous because it is "clearly barred by . . . the statute of limitations" and defendant's counsel has notified plaintiff's counsel of this fact.[52] Therefore, Sierra-Cedar contends that Keller's initial filing and his case as it exists now are frivolous.[53] Keller no longer disputes whether the notice was downloaded, nor does he contest that the EEOC notice was effective from the date of receipt.[54] But Keller responds by arguing that, due to the doctrine of equitable tolling, the statute of limitations does not bar his claim.[55]

Keller cites to Third Circuit precedent explaining that Title VII's time limitations are not jurisdictional, and, being analogous to a statute of limitations, are subject to equitable modifications such as tolling.[56] Tolling is a well-recognized equitable doctrine which federal courts may apply to Title VII actions.[57] "Under equitable tolling, plaintiffs may sue after the statutory time period for filing a complaint has expired if they have been prevented from filing in a timely manner due to sufficiently inequitable

---

[51] *Carter v. Keystone*, 360 F.App'x 271, 272-73 (3d Cir. 2010) (quoting *Seitzinger*, 165 F.3d at 240).
[52] *Huntsman*, 379 F.App'x at 463; *Moore v. Air Methods, Inc.*, No. 3:14-CV-0684, 2015 U.S. Dist. LEXIS 98879, at *15-16 (M.D. Pa. July 29, 2015).
[53] Doc. 35 at 17.
[54] Doc. 37 at 3-5.
[55] *Id.* at 5-8.
[56] Doc. 37 at 5 (citing *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380 (3d Cir. 1994)).
[57] *Baldwin Cnty Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984); *Carter*, 360 F.App'x 272-72 (3d Cir. 2010).

circumstances."[58] The Supreme Court of the United States' decision in *Baldwin County Welcome Center v. Brown* listed several examples of when equitable tolling should be applied by federal courts, and Keller cites to one such example: where "the court misled the plaintiff, and, as a result, the plaintiff believed he had done everything required of him."[59]

Arguing that his case is "closely analogous," Keller contends that the EEOC was "standing in place of the court" when it sent the right to sue letter.[60] It follows, Keller explains, that when the paper letter received by regular mail stated that Keller must file suit within 90 days of receipt, Keller was misled, as his actual filing deadline was triggered by Ms. Chevalier's earlier download of his notice. Keller also provides dicta from the United States Courts of Appeals for the Third and Eighth Circuits stating that plaintiffs may justifiably rely on written communications from the EEOC in the equitable tolling context.[61] Finally, Keller cites to an Eighth Circuit case, *Anderson v. Unisys Corp.*, in which misleading language in a letter from the Minnesota Department of Human Relations stating that the statute of limitations was one year rather than 300 days did toll the statute of limitations.[62]

Sierra-Cedar cites to the Western District of Pennsylvania's decision in *Gilson v. State Police*, in which a member of the attorney's office staff misplaced his right to

---

[58] *Seitzinger*, 165 F.3d at 240.
[59] Doc. 37 at 6 (citing *Baldwin*, 466 U.S. at 151).
[60] *Id.*
[61] *Id.* at 7 (citing *Robinson v. Dalton*, 107 F.3d 1018 (3d Cir. 1997) and *Jennings v. Am. Postal Workers Union*, 672 F.2d 712, 714-15 (8th Cir. 1982)).
[62] *Id.* (citing 47 F.3d 302, 306-307 (8th Cir. 1995)).

10

sue letter.[63] In a footnote containing no analysis, *Gilson* stated that this did not present a scenario in which "the plaintiff in some extraordinary way was prevented from asserting her rights."[64] Sierra-Cedar also cites to two other in-Circuit district court decisions, which both found that counsel's failure to open the EEOC's link and read the right to sue letter in a timely manner did not justify tolling the statute of limitations.[65] Finally, Sierra-Cedar notes that in each cited case where equitable tolling was applied to an EEOC letter's language, the plaintiff was pro se, which impacted the court's analysis.[66]

### 2.    Analysis

Sierra-Cedar first advocates for sanctions based on Keller's initial filing of a complaint, but this can be dismissed with little analysis. Even assuming that the effective date of receipt was marked by Chevalier's download of the notice, filing the complaint was still not objectively unreasonable. Clearly, an objective inquiry is not conducted with "the wisdom of hindsight;" it does not assess information unknown to the attorney filing the complaint.[67] The Court sees no reason to doubt the allegation that Chevalier, the firm's paralegal, never notified Keller's attorneys of the online notice

---

[63] Doc. 39 at 4 (citing *Gilson v. State Police*, 175 F.Supp. 3d 528, 561 n.28 (W.D. Pa. 2016)).
[64] *Gilson*, 175 F.Supp. at 561 n.28.
[65] Doc. 39 at 4 (citing *Panconi v. Abington Hospital-Jefferson Health*, 604 F.Supp. 3d 290 (E.D. Pa. 2022) and *McNaney v. Sampson & Morris Grp., Inc.*, No. 2:21-cv-1809, 2022 U.S. Dist. LEXIS 63608, at *8-9 (W.D. Pa. Apr. 5, 2022)).
[66] Doc. 39 at 10.
[67] *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 484 (3d Cir. 1987) ("the court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading . . . was submitted") (quoting *Eavenson, Auchmuty & Greenwald v. Holtzman*, 775 F.2d 535, 540 (3d Cir. 1985)); *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421-22 (1978).

she downloaded. So based on the information available at the time, the only notice Keller's counsel was aware of when filing the complaint was the notice Keller received through regular mail.

The gravamen of Sierra-Cedar's motion is not Keller's initial filing, but his refusal to withdraw the complaint later in the litigation.[68] Weighing the case law presented by both parties, Keller's argument is not frivolous. If a party reaches the wrong outcome on a "fact intensive, close call" application of law, there is no ground for sanctions.[69] And as an equitable doctrine, tolling is necessarily fact-specific, depending upon nebulous considerations such as fairness and "extraordinary circumstances."[70] Other in-Circuit district court decisions have in fact applied equitable tolling to misleading language contained in a right to sue letter where plaintiffs were represented by counsel.[71] But even absent such case law, accepting Sierra-Cedar's argument that tolling has been rejected in similar in-Circuit district court cases would

---

[68] It is not actually clear at which point Sierra-Cedar believed Keller's failure to withdraw became sanctionable. So the Court explains why even at the most extreme point in time, Keller still did not violate Rule 11.

[69] *C.H. Robinson Worldwide, Inc. v. Lobran*, 695 F.3d 758, 767 (8th Cir. 2012).

[70] *See, e.g.*, *Commonwealth of Pennsylvania v. Allegheny Energy, Inc.*, No. 2:05-cv-885, 2008 U.S. Dist. LEXIS 93800, at *16 (W.D. Pa. Nov. 18, 2008) ("The equitable tolling test is very fact-intensive."); *Urinvoli v. Cathel*, 546 F.3d 269 (3d Cir. 2008) ("A statute of limitations 'can be tolled when principles of equity would make [its] rigid application unfair.'") (quoting *Shendock v. Dir., Office of Workers' Comp. Programs*, 893 F.2d 1458, 1462 (3d Cir. 1990)); *Muchinski v. Wilson*, 694 F.3d 308, 329 (3d Cir. 2012) ("The extraordinary circumstances prong [of the tolling test] requires that the petitioner 'in some extraordinary way be[] prevented from asserting his or her rights.'") (quoting *Brinson v. Vaughn*, 398 F.3d 225, 230 (3d Cir. 2005)).

[71] *See Pyun v. Colvin*, No. 16-2633, 2016 U.S. Dist. LEXIS 177168, at *13-14 (E.D. Pa. Dec. 22, 2016); *Elchik v. Akustica, Inc.*, No. 12-578, 2013 U.S. Dist. LEXIS 53376, at *55 (W.D. Pa. Mar. 6, 2013) (Lenihan, M.J.), *report and recommendation adopted*, 2013 U.S. Dist. LEXIS 49458, at *4 (W.D. Pa. Apr. 5, 2013).

not justify sanctions. "Courts do not penalize litigants who try to distinguish adverse precedents [or] argue for the modification of existing law."[72]

The Eastern District of Pennsylvania's decision in *Love v. Merck & Co.* is instructive.[73] In *Love*, the plaintiff argued that because a plaintiff's good faith effort to exhaust grievance procedures can toll the statute of limitations, the statute of limitations for his two-month-late complaint should be tolled because he was waiting for his NLRB charge to be resolved during that time.[74] On the merits, the *Love* court rejected the argument, noting that the analogy was unfounded, that two in-Circuit district court decisions and five out-of-Circuit court of appeals decisions had held the opposite, and that the plaintiff's argument partially relied on his misreading of the case he was analogizing to.[75]

Yet that court still found sanctions inappropriate, for reasons that apply as much here; the moving party did not present a Third Circuit decision squarely foreclosing the application of equitable tolling, and there was no reason to believe that the tolling argument was made in bad faith.[76] In addition to his loose analogy to *Baldwin County*, Keller has gone far beyond the plaintiff in *Love* by providing an out-of-Circuit case

---

[72] *Nisenbaum v. Milwaukee Cnty*, 333 F.3d 804 (7th Cir. 2003) (Easterbrook J.); *see also Rode v. United States*, 812 F.Supp. 45, 48 (M.D. Pa. 1992) (sanctions inappropriate where plaintiff's counsel had cited out-of-Circuit opinions and did not exhibit lack of good faith); *Foreman v. Wadsworth*, 844 F.3d 620, 626-27 (7th Cir. 2016) (even if counsel "believed it would be futile" to make an argument for modifying existing precedent to the district court, doing so is not sanctionable because attorney is still required "to present a nonfrivolous argument for changing the law to the district court rather than raising it for the first time on appeal.").
[73] No. 04-4878, 2005 U.S. Dist. LEXIS 917 (E.D. Pa. Jan. 21, 2005).
[74] *Id.* at *11.
[75] *Id.* at *8-11.
[76] *Id.* at *13.

with analogous facts and in-Circuit dicta suggesting that equitable tolling may be available in similar circumstances.

These facts distinguish Keller's case from *Moore v. Air Methods, Inc.*, relied upon by Sierra-Cedar. In *Moore*, where the plaintiff alleged that his union breached the duty of representation, the plaintiff's only argument that the statute of limitations had not expired by the time of filing was that such claims do not accrue until a union stops actively representing an employee.[77] But after receiving a notice from the union, informing plaintiff in "the clearest language that the Union was not going to pursue his grievance further or take any further action on his behalf," that plaintiff's only reason for alleging the union's continued representation was an unanswered email that he subsequently sent to the representative.[78]

My colleague, the Honorable Robert D. Mariani, held that it was objectively unreasonable to believe that the union continued representing the plaintiff under these facts, and therefore continuing the litigation was frivolous.[79] Unlike Keller's case, *Moore* addressed no analogy to well-established yet fact-bound law, but rather dealt with an undisputed fact to which the legal principle did not apply. And Keller's EEOC letter, unlike the unambiguous letter received in *Moore*, does not stand in clear contradiction to his legal argument, as it states: "it is prudent that your suit be filed

---

[77] *Moore*, 2015 U.S. Dist. LEXIS 98879, at *17 (citing *Childs v. Pennsylvania Federation Brotherhood of Maintenance of Way Employees*, 831 F.2d 429, 436 (3d Cir. 1987)).
[78] *Id.* at 18-19.
[79] *Id.*

14

within 90 days of the date this Notice was issued to you (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later."[80]

Because the letter states that a plaintiff has 90 days from the date of receipt to file a claim, a reasonable attorney could non-frivolously argue that Keller's EEOC letter was sufficiently misleading to justify equitable tolling. Sierra-Cedar argues that language elsewhere in the letter implicitly suggests that the letter is intended for litigants without attorneys, and therefore, Keller should have inferred that its statute of limitations instructions did not apply to him.[81] Regardless of the merits of this argument, it is certainly too exacting and fact-bound to justify imposing sanctions, as the more extreme facts in *Moore* demonstrate. The precise line between frivolous and non-frivolous arguments is itself fact-bound and difficult to define, but the difference between Keller's case and *Love*, on one hand, and *Moore*, on the other, is clear.

While analyzing frivolousness peripherally implicates a case's merits, a motion for sanctions should never simply substitute for a merits decision. "Rule 11 should not be used to raise issues as to the legal sufficiency of a claim or defense that more appropriately can be disposed of by a . . . motion for summary judgment."[82] "Though [Sierra-Cedar] may well be vindicated in the end, a Rule 11 motion 'should not be employed . . . to test the legal sufficiency or efficacy of allegations in the pleadings

---

[80] Doc. 37 at 8.
[81] Doc. 39 at 5-6; Doc. 39-1 ("If you intend to consult an attorney, you should do so promptly . . . [g]ive your attorney a copy of this Notice.").
[82] 5A Wright & Miller § 1335.

15

where other motions are available for those purposes.'"[83] As the Supreme Court of the United States cautioned in *Christiansburg Garment Co. v. EEOC*:

> [I]t is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success . . . . Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing [or continuing] suit."[84]

### D. Sanctions Analysis

Finally, even if a Rule 11 violation had occurred, imposing any sanction—but especially the dismissal requested by Sierra-Cedar—would be inappropriate.

Dismissal under Rule 11 is a "sanction of last resort"[85] "reserved for the rare case involving extreme misbehavior by the offending party such as fraud, contempt, and willful bad faith."[86] Dismissal is only a legitimate sanction under Rule 11 when lesser sanctions would be ineffective or are unavailable.[87] "When determining whether dismissal is an appropriate sanction, courts should consider (1) the extent of the party's personal responsibility, (2) the prejudice his actions have caused his adversary, (3) any history of such conduct, (4) any evidence of bad faith, (5) the effectiveness of other

---

[83] *State Farm Mut. Auto Ins. Co. v. Ficchi*, No. 10-555, 2012 U.S. Dist. LEXIS 63282, at *58 (E.D. Pa. 2012) (quoting Fed. R. Civ. P. 11 advisory committee note to 1993 amendment).
[84] 434 U.S. 412, 421-22 (1978).
[85] *Liggon-Redding v. Estate of Robert Sugarman*, 659 F.3d 258 (3d Cir. 2011); *Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 869 (3d Cir. 1984) ("dismissal must be a sanction of last, not first, resort.").
[86] 5A Wright & Miller § 1336.3.
[87] *Marina Mgmt. Servs., Inc. v. Vessel My Girls*, 202 F.3d 315 (D.C. Cir. 2000); *Williams v. Chicago Bd. of Educ.*, 155 F.3d 853 (7th Cir. 1998).

sanctions, and (6) the merit of the dismissed pleading."[88] The Third Circuit has also noted that because "we have increasingly emphasized visiting sanctions directly on the delinquent lawyer, rather than on a client who is not actually at fault," "we do not favor dismissal of a case when the attorney's delinquencies – not the client's – necessitate sanctions."[89] Indeed, no case cited by Sierra-Cedar actually upheld the sanction of dismissal.[90]

Here, there is no conduct meriting a "last resort" to dismissal under Rule 11. At the very worst, Keller's counsel is accused of refusing withdrawal in pursuit of a dubious argument; this is far from fraud, contempt, or willful bad faith, and poses far less of a threat to the public and the justice system. No evidence demonstrates that dismissal is necessary to prevent future misconduct, nor is there any history of prior sanctions necessitating this last resort measure. Keller's counsel may have some responsibility for inadequately monitoring their paralegals, but the most prejudice which has resulted, even if this Court later grants Sierra-Cedar's motion for summary judgment, is a modest extension to the length of this suit. With no history of misconduct, no evidence of bad faith, and no unsuccessful attempt to rectify misconduct with lesser

---

[88] *CUTTR Holdings LLC v. Patinkin*, No. 5-cv-4537, at *12 (D. N.J. Feb. 7, 2008) (citing *Poulis*, 747 F.2d at 868); *see also Carter v. Einstein Medical Ctr.*, 804 F.2d 805, at 807 (3d Cir. 1986) (articulating similar factors for district courts to consider when weighing whether to impose dismissal as a sanction).

[89] *Carter*, 804 F.2d at 807-808.

[90] *See id.* at 808 ("We conclude that the complaint in this case should be reinstated and plaintiff given a reasonable time to secure new counsel or proceed pro se."); *Sebastian Int'l, Inc. v. Consumer Contacts (PTY), Ltd.*, No. 87-1995, 1988 U.S. Dist. LEXIS 3462, at *29 (D. N.J. Mar. 11, 1988) ("[P]laintiff's claims are not so devoid of fact as to merit summary dismissal under Rule 11 at this juncture."); *Moore*, 2015 U.S. Dist. LEXIS 98879, at *29 ("The sanction that shall be imposed is a public declaration of a Rule 11 violation.").

sanctions, there is no reason to impose dismissal, and doing so would likely be an abuse of this court's discretion.

### III.   CONCLUSION

Sierra-Cedar's motion confuses the merits with sanctionable conduct. It is therefore crucial to reiterate that this decision does not touch upon the merits of Keller's equitable tolling arguments. Because sanctions are unwarranted even if the Court accepts Sierra-Cedar's legal conclusion, there is no need to decide the underlying issue to analyze whether Keller's complaint is frivolous. This is especially important given that "[a] motion for sanctions must be made separately from any other motion."[91] Sierra-Cedar has indicated in its briefings that it intends to move separately for summary judgment,[92] and the Court will only resolve that issue with the benefit of full briefing by both parties.

Keller's initial filing and refusal to withdraw his complaint are not sanctionable under Rule 11, and even if they were, this Court would exercise its discretion not to impose sanctions. Nor is any conduct alleged by Sierra-Cedar which would justify the severe sanction of dismissal. Accordingly, Sierra-Cedar's motion for sanctions is denied. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[91] Fed. R. Civ. P. 11(b)(c)(2).
[92] Doc. 39 at 4, n.1.